# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 10, 2012

## ANDREW D. HARVILLE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5765     Joseph H. Walker, Judge**

---

**No. W2011-00835-CCA-R3-PC  - Filed August 13, 2012**

---

Petitioner, Andrew D. Harville, was convicted by a jury of first degree premeditated murder and felony evading arrest. Petitioner was sentenced by the trial court to life imprisonment for his murder conviction and two years for evading arrest, and his sentences were ordered to be served consecutively. This Court affirmed Petitioner's convictions on direct appeal. A summary of the facts underlying Petitioner's convictions can be found in this Court's opinion in *State v. Andrew Deon Harville*, No. W2008-02375-CCA-R3-CD, 2010 WL 571786 (Tenn. Crim. App. at Jackson, filed Feb. 19, 2010), *perm. app. denied* (Tenn. June 16, 2010). Petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel at trial. The post-conviction court denied Petitioner's request for relief following an evidentiary hearing. Petitioner appeals. Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Taylor Forrester, Covington, Tennessee, (on appeal) and Gary F. Antrican, District Public Defender; David S. Stockton, Assistant Public Defender; and Jeff Lee, Assistant Public Defender, (at trial) for the appellant, Andrew D. Harville.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; and D. Michael Dunavant, District Attorney General, Jason Poyner, Assistant District Attorney General, James Walter Freeland, Jr., Assistant District Attorney General, and P. Neal Oldham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Post-conviction hearing*

Petitioner testified that he was convicted by a jury of first degree murder. His trial counsel was initially retained and later appointed to represent him. Petitioner testified that trial counsel met with him in jail "probably three times" prior to trial. At their first meeting in February, 2008, trial counsel communicated a plea offer by which Petitioner would plead guilty to second degree murder and be sentenced to 25 years to be served at 100 percent. Petitioner testified that counsel advised him to accept the plea offer and gave him three days to consider the offer. He testified that trial counsel did not provide him with, or discuss any, discovery materials prior to presenting the offer.

Petitioner testified that counsel met with him again in March, 2008, to give Petitioner a copy of the State's discovery response, but counsel did not discuss it with him. Thereafter, Petitioner wrote letters to counsel requesting that he file a motion to suppress Petitioner's statement on the basis that Petitioner was intoxicated, but counsel did not file the motion. Petitioner testified that he continued to request that counsel file a motion to suppress and that he argued with counsel about filing a motion, and he "told [counsel] he was fired because he wasn't doing what [Petitioner] was asking him to do." Petitioner testified that he gave the statement to investigators on the date of the murder after having drank "[p]robably a half a gallon" of vodka.

Petitioner told counsel about potential witnesses that could be called to testify on his behalf at trial, but counsel did not contact all of them. Petitioner spoke to counsel on August 21, 2008, just days prior to trial. Petitioner testified that "the stuff he was telling me that they said, if I had of knew [sic], I would have took [sic] the plea." Petitioner also testified that during jury selection, counsel provided him with a list of potential jurors, and Petitioner asked counsel to strike certain jurors, but counsel refused, stating "[w]e want to keep them."

Petitioner testified that counsel sent him a letter dated February 19, 2008, in which counsel advised that Petitioner had only a 20 percent chance of being convicted of any lesser offense than second degree murder. Petitioner testified that he never had an opportunity to discuss the letter with counsel because he "didn't see him no more [sic]" between the time he received the letter and the August 21st meeting. Petitioner chose not to testify at trial. He testified that trial counsel did not adequately prepare him to testify.

On cross-examination, Petitioner acknowledged that in a ten-page letter from counsel to Petitioner dated June 16, 2008, counsel "responded to each and every" concern Petitioner had expressed. Petitioner testified that prior to trial, counsel told him "what those new

[State's] witnesses said and who they were and this and that," and Petitioner asked to accept the State's plea offer but that counsel said it was "too late." Petitioner acknowledged that he was at the Farm Club, where the shooting occurred, on September 15, 2007, but he could not recall what happened because he was intoxicated.

Petitioner's trial counsel testified that he had been employed with the Public Defender's Office since 1992. He was appointed to represent Petitioner after Petitioner was indicted for first degree murder and felony evading arrest on November 30, 2007. Trial counsel testified that he conveyed a plea offer from the State by which Petitioner would plead guilty to second degree murder in exchange for a sentence of 25 years to be served at 100 percent. Trial counsel reviewed the State's discovery response with Petitioner, but he did not recall in "how much detail" he discussed it with Petitioner. He testified that during his representation of Petitioner, Petitioner became uncooperative and "was only interested in pursuing his defense from the standpoint of, . . . , [he] was drunk." Counsel testified that the State had a videotape of Petitioner leaving the crime scene and throwing the murder weapon out of his car door. Counsel testified that he did not file a motion to suppress because "the only way [Petitioner] could get his self-defense argument in front of the jury was to let his statement come in." Counsel did not recall that Petitioner told him he was incompetent to give a statement. Counsel believed that Petitioner understood his rights at the time he gave his statement.

Trial counsel testified that he contacted the potential witnesses Petitioner supplied him, and he determined that "they weren't going to be able to justify a homicide based on [Petitioner's] perceptions." Trial counsel testified that he contacted three or four potential witnesses and determined that their testimony was not relevant. Counsel "didn't take up the Court's time with something that foolish."

Trial counsel testified that he and his investigators "spent an inordinate amount of time on [Petitioner's] case." He testified that he was "very well prepared to go to trial [although he] would have preferred not to." Regarding jury selection, trial counsel did not recall "a specific person that he said keep or not keep that we disagreed on." Counsel testified that he discussed with Petitioner whether or not Petitioner would testify at trial during some of their earliest meetings. Counsel testified that he explained to Petitioner that in order to establish his defense, Petitioner would have to testify, but Petitioner chose not to testify. Counsel testified,

> I felt like as far as his theory of self-defense, about the only credible way to get it in front of the jury was to let in his statement mentioning the fact that the other guy had a gun. That if he got up, especially since no gun was

found, that the cross-examination based on his prior record and his ability to be a witness for himself would get lost.

I figured probably that he would allow himself to get angry and scare the jury by being the type of person they would expect might get drunk and shoot somebody if he said the wrong word.

Trial counsel testified that he made a strategic decision not to challenge the admission of Petitioner's statement because without Petitioner's testimony at trial, there was no other way to present Petitioner's account of the events. Counsel testified, "that was our basis, is to let his statement come in and try to leave the jury with the impression that there was some self-defense element."

Trial counsel testified that he was initially under the impression that the shooting occurred within minutes after Petitioner left the Farm Club following an altercation, but he later discovered that Petitioner had left two or three hours prior to returning with a gun. Counsel also learned that two witnesses observed Petitioner in his car with a shotgun prior to the shooting, and one of the witnesses heard Petitioner say that he was waiting there to kill someone. Counsel testified that the evidence of premeditation was strong. Counsel testified that Petitioner "had been sitting in the parking lot with a loaded shotgun waiting for an opportunity to kill the bouncer, and the poor man came out and got killed."

Special Agent David Harmon, a criminal investigator with the Tennessee Bureau of Investigation, was the lead investigator in this case. He testified that he responded to the crime scene and interviewed witnesses there. Agent Harmon testified that the shooting occurred at approximately 2:00 or 3:00 a.m., and he met with Petitioner in jail at approximately 7:00 a.m. on the same morning. Agent Harmon was aware that Petitioner had been awake all night and had been drinking alcohol. He testified that Petitioner smelled of alcohol. Agent Harmon testified, however, that Petitioner had been in custody since shortly after the shooting, and Petitioner did not appear to Agent Harmon to be intoxicated. Agent Harmon read to Petitioner a waiver form, which stated, "At the time I'm making this statement, I'm not under the influence of alcohol, drugs, or any other type of intoxicant which would render me incapable of understanding the statement made by me." Petitioner signed the waiver.

Agent Harmon testified that sometime during his questioning of Petitioner, Petitioner became agitated with another detective there and requested "to go to the back." Agent Harmon testified that "[they] took a break, let cooler heads prevail, and the deputies took [Petitioner] over to the jurors' room." Agent Harmon testified that he did not end the questioning because he "needed to get his statement on what happened" and that "[e]ven if

Petitioner [wanted to end the questioning], [they] were going to find out what happened." Agent Harmon testified that Petitioner "calmed down," and that "[t]he second time he was real cooperative, a lot more polite, [and he] wanted to tell what happened." Agent Harmon wrote the statement, which Petitioner then reviewed, made a correction, and signed.

*Analysis*

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. *Id*. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact *de novo* with a presumption that those findings are correct. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely *de novo*. *Id*.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this Court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

Petitioner contends that his trial counsel was ineffective for inadequately preparing his case for trial, inadequately preparing Petitioner to testify, and for failing to file a motion to suppress Petitioner's statement on the basis that Petitioner was intoxicated at the time of the statement. Petitioner argues that trial counsel's decision not to seek suppression of the statement provided the jury with "an absolute confession to the underlying crime" rather than evidence in support of self-defense. Petitioner complains that trial counsel's first meeting

with Petitioner was in February, 2008, although counsel testified that he was appointed to represent Petitioner three months earlier in November, 2007. Petitioner also complains that counsel did not adequately discuss with him the State's evidence before presenting him with a plea offer; and therefore, Petitioner's decision to reject the State's plea offer was ill-informed.

The State responds that Petitioner has not shown any grounds upon which a motion to suppress his statement would have been granted. In its order denying Petitioner's post-conviction petition, the post-conviction court found as follows:

> . . . . [Trial counsel] felt the statement made by the petitioner to Agent Harmon was beneficial to help establish self-defense, since the statement claimed the victim had a weapon. Petitioner never stated to counsel he was drunk or incompetent to make a statement. For example, Petitioner told law enforcement what his rights were. The statement was on video, which counsel reviewed, Counsel did not perceive a basis to suppress the statement.
>
> . . . .
>
> . . . . Petitioner testified that the statement was not his, that he did not make that statement.
>
> Before any statement was made, the Petitioner was advised of the rights due him under the Miranda decision, and he was advised of his rights in writing, and signed that he understood his rights and was willing to make a statement and answer questions without a lawyer being present.
>
> Agent Harmon testified that Petitioner was not drunk and voluntarily gave the statement. He went over the statement with Petitioner, and petitioner approved the statement and made at least one correction. Petitioner did not give a different statement. He gave an initial oral statement, but became upset with [another detective] in the room, and left. Approximately 45 minutes later the written statement was taken by Agent Harmon. Petitioner was calm and spoke much as he did in court at the hearing.
>
> The court accredits Agent Harmon's testimony that the petitioner's statements were voluntary. Petitioner has shown no basis to file a motion. Furthermore, the petitioner failed to establish any basis upon which the

motion would have been granted had it been filed. The first degree murder happened after petitioner laid in wait in a parking lot and purposefully shot the victim in front of witnesses. There was overwhelming proof against the petitioner.

We conclude that the evidence does not preponderate against the trial court's findings. Trial counsel testified that the decision not to file a motion to suppress Petitioner's statement was a strategic one in that it was the only means by which to present Petitioner's theory of self-defense. The post-conviction court accredited Agent Harmon's testimony that Petitioner was not intoxicated at the time he gave his statement. Furthermore, Petitioner has not established that he was prejudiced by trial counsel's failure to seek suppression of his statement. Even if trial counsel had filed, and the trial court granted, a motion to suppress Petitioner's statement, there was sufficient evidence, other than the statement, of Petitioner's guilt at trial. In our opinion on direct appeal, this Court observed:

> Multiple witnesses testified that [the victim] did not possess a weapon that night other than the mace used to spray [Petitioner]. Next, several witnesses testified that [Petitioner] made threats and declarations of his intent to kill [the victim]. . . . Evidence was also presented that [Petitioner] took steps to procure a weapon. The owner of The Farm testified that [Petitioner] was dropped off at the club that night[.] Several staff members stated that after [Petitioner] was sprayed with mace, he walked off the premises toward the highway. [Petitioner] later reappeared in his gray Pontiac with a shotgun.

*State v. Andrew Deon Harville*, No. W2008-02375-CCA-R3-CD, 2010 WL 571786, *6 (Tenn. Crim. App. at Jackson, filed Feb. 19, 2010), *perm. app. denied* (Tenn. June 16, 2010).

Trial counsel evaluated Petitioner's credibility and criminal history and determined that Petitioner would make a poor witness. Furthermore, counsel testified that Petitioner chose not to testify after adequate preparation and discussion. The transcript of the trial proceedings shows that Petitioner was questioned by the trial court and confirmed his decision not to testify. Petitioner has not shown that trial counsel was deficient for failing to adequately advise or prepare him to testify or that Petitioner's testimony would have changed the outcome of the trial. Petitioner is not entitled to relief.

**CONCLUSION**

After a careful review of the record, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE